[Cite as *Boston Hts. v. Hudson*, 2026-Ohio-2391.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

VILLAGE OF BOSTON HEIGHTS, et al.

    Appellants

v.

CITY OF HUDSON, et al.

    Appellees

C.A. No.    31482

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2024-10-4503

DECISION AND JOURNAL ENTRY

Dated: June 24, 2026

SUTTON, Judge.

{¶1} Plaintiffs-Appellants, Village of Boston Heights, AJ Allison Enterprises, LLC, and S.J. Fireworks Unlimited, LLC, (collectively "Appellants") appeal the judgment of the Summit County Court of Common Pleas. This Court affirms.

## II.

## Relevant Background

{¶2} This appeal arises from a Memorandum of Understanding ("MOU") entered into in 2008 by the mayors of the City of Hudson and the Village of Boston Heights. According to the Hudson City Charter, the mayor of Hudson has no authority to bind the City to a contract. Instead, the city manager has the authority to enter into contracts on behalf of the City.

{¶3} The MOU indicated, in relevant part, that:

The section of commercial lands in both the City and the Village, addressed by this MOU, is bordered by State Route 8 to the west, Interstate 80 (Ohio Turnpike) to the north, State Route 303 to the south and the City's district 6 to the east.

Presently, the City has commercially zoned land along its western boundary, in this MOU defined area, that has utility lines to service the property, yet little exposure to the high traffic volume Route 8 corridor. The Village has commercially zoned land in this MOU defined area, along the Route 8 corridor directly accessed by Boston Mills Road and Chittenden Road and its new configuration that is in need of water and sewer services. Therefore, each community joins in this MOU to comprehensively study, plan, and set in motion an agreement to enhance these mutual properties with available highway access and appropriate utilities to benefit each community.

{¶4} In 2014, through two separate resolutions, the City of Hudson extended its water line to certain properties in the Village of Boston Heights' commercial zone. These properties are not part of this appeal. AJ Allison Enterprises, LLC, owns a property in the Village of Boston Heights' commercial zone and S.J. Fireworks Unlimited, LLC leased that property for its business. In 2023, AJ Allison Enterprises, LLC presented a resolution to Hudson City Council for the City to provide water service to its property. Hudson City Council voted against the proposed resolution for water service to the AJ Allison Enterprises, LLC property.

{¶5} Appellants filed a complaint and an amended complaint against American Fireworks, Inc. ("AFI"), City of Hudson, Chris Foster, Chris Banweg, Karen Heater, Nicole Kowlaski, Dr. Michael Bird, Dr. Patricia Goetz, and Skylar Sutton ("Hudson Appellees") for: (1) breach of contract; (2) detrimental reliance; (3) promissory estoppel; (4) tortious interference with a contract; and (5) breach of fiduciary duty. AFI and the Hudson Appellees filed separate motions to dismiss, pursuant to Civ.R. 12(B)(6), for failure to state a claim upon which relief can be granted as to both the complaint and amended complaint.

{¶6} The trial court granted AFI's and the Hudson Appellees' motions to dismiss Appellants' amended complaint. In so doing, the trial court determined there was no valid contract between the Village of Boston Heights and the Hudson Appellees, Ohio does not recognize the tort of detrimental reliance, there was no clear promise for the City of Hudson to supply water

service to the Village of Boston Heights' commercial zone, and members of the Hudson City Council did not owe a fiduciary duty to Plaintiffs-Appellants. Additionally, as to AFI, the trial court determined there cannot be tortious interference with a contract because there is no valid contract between the Village of Boston Heights and the City of Hudson with regard to the issue at hand.

{¶7} Appellants now appeal raising three assignments of error for our review.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN DISMISSING THE BREACH OF CONTRACT CLAIM BECAUSE HUDSON'S PERFORMANCE CREATED BINDING CONTRACTUAL OBLIGATIONS.**

{¶8} In their first assignment of error, Appellants argue the trial court erred in dismissing its breach of contract claim. Specifically, Appellants argue a "contract was created" between the City of Hudson and the Village of Boston Heights when Hudson City Council and the City Manager passed and signed two resolutions, in 2014, to provide water service to two businesses located in the Village of Boston Heights' commercial zone. Essentially, Appellants argue the performance of extending the water lines to two properties via the 2014 resolutions ratified the MOU which, on its face, was not a contract.

{¶9} This Court reviews an order granting a Civ.R. 12(B)(6) motion to dismiss de novo. *Perrysburg Twp. v. City of Rossford*, 2004-Ohio-4362, ¶ 5. A Civ.R. 12(B)(6) motion tests the sufficiency of the complaint, and dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." Civ.R. 12(B)(6). In construing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must presume all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). Before the court may dismiss the complaint, it must appear

beyond doubt that plaintiff can prove no set of facts entitling the plaintiff to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus.

**Breach of Contract**

{¶10}  "The elements for claim for breach of contract include the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Skycasters, LLC v. Kister*, 2021-Ohio-4154, ¶ 42 (9th Dist.).  Further, "[t]he elements necessary to form a contract 'include an offer, acceptance, contractual capacity, consideration, . . . a manifestation of mutual assent and legality of object and of consideration.'" *Bldg. Indus. Consultants, Inc. v. 3M Parkway, Inc.*, 2009-Ohio-1910, ¶ 12 (9th Dist.), quoting *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16.  "To constitute a valid contract, both parties to a contract must assent to its terms; there must be a 'meeting of the minds' of the parties with respect to the essential terms of the contract, which terms are also definite and certain." *Bldg. Indus. Consultants, Inc.* at ¶ 12, citing *Franco v. Kemppel Homes, Inc.*, 2004-Ohio-2663, ¶ 22 (9th Dist.).

{¶11}  Here, as acknowledged by Appellants in their first amended complaint, the MOU did not constitute a valid contract between the City of Hudson and the Village of Boston Heights. Appellants, in their first amended complaint, characterized the MOU as a "negotiation between the two parties[,]" but also claimed the "MOU is evidence of the agreement[.]"  As indicated above, the mayor of the City of Hudson did not have the authority to bind the City of Hudson to *any* contract under the Hudson City Charter.  In accordance with the Hudson City Charter, the city manager has the power to contract on behalf of the municipality.  Further, looking specifically at the language in the MOU, the only "agreement" between the City of Hudson and the Village of Boston Heights was for *future intentions* to "comprehensively study, plan, and set in motion an agreement to enhance these mutual properties with available highway access and appropriate

utilities to the benefit of each community." Indeed, the terms "study, plan, and set in motion[,]" as used in this MOU, are not definite and certain as required to show assent to a contract.

{¶12} Appellants also argue partial performance through the passing of two separate resolutions in 2014, which extended Hudson's water service to two businesses in the Village of Boston Heights, impliedly ratified the MOU. We are not persuaded by this argument. Appellants' reliance on this Court's decision in *Arnold v. City of Akron*, 54 Ohio App. 382 (9th Dist. 1936), to support their argument regarding ratification by performance is misplaced. In *Arnold*, the Akron City Council *had the legal authority* to enter the municipality into the questioned contract. Therefore, the Akron City Council could subsequently ratify the contract. Whereas, here, the mayor of the City of Hudson never had the authority to contract on behalf of the municipality. As indicated in *Arnold* at 388, "[t]he charter of the city [of Akron] *contains no provision prohibiting the contract*, and, for the reasons stated, it does [not] contain any provision indicating that the council does not have authority, under the broad powers granted to it, to authorize the making of such a contract[.]" (Emphasis added.) Contrary to the facts in *Arnold*, however, the Hudson City Charter did not authorize the mayor to contract on behalf of the municipality. Instead, the Hudson City Charter granted the city manager the authority to contract on behalf of the municipality.

{¶13} As reiterated by the Supreme Court of Ohio in *Shampton v. Springboro*, 2003-Ohio-1913, ¶ 27-28:

> Many times this court has held that no recovery can be had on a contract that is entered into contrary to one or more of the legislated requirements. * * *

> A thread running throughout the many cases the court has reviewed is that the contractor must ascertain whether the contract complies with the Constitution, statutes, charters, and ordinances so far as they are applicable. If he does not, he performs at his peril.

*Lathrop Co. v. City of Toledo*, 5 Ohio St.2d 165, 172-173 (1966). The MOU in this matter did not comply with the Hudson City Charter. Further, the MOU was a mere expression of future intentions between the parties to study, plan, and set in motion an agreement, *which did not yet exist*, to enhance these mutual properties with available highway access and appropriate utilities to the benefit of each community. The MOU did not include definite and certain terms as required for a valid contract, and the only agreement between the parties was to work together and do more research regarding future possibilities.

{¶14} "In Ohio, municipal corporations cannot be sued in quasi-contract." *Franks v. Vill. of Bolivar*, 2011 WL 5838209, * 5 (N.D. Ohio Nov. 18, 2011), citing *Cuyahoga Cnty. Hosp. v. City of Cleveland*, 15 Ohio App.3d 70 (8th Dist. March 19, 1984). The City of Hudson is a municipal corporation that cannot be bound by a contract "unless the agreement is formally ratified through proper channels. As a result, a claim may not be sustained against a municipal corporation upon theories of implied or quasi-contract. Only express agreements adopted by the City in accordance with law may be enforced." *Wright v. Dayton*, 2004-Ohio-3770, ¶ 40 (2d Dist.). As indicated above, the City of Hudson never adopted an agreement, in writing, to extend water services to all businesses in the Village of Boston Heights' commercial zone.

{¶15} Thus, even presuming all factual allegations of the first amended complaint are true and in making all reasonable inferences in favor of Appellants, it appears beyond doubt Appellants can prove no set of facts entitling them to recovery for breach of contract.

{¶16} Accordingly, Appellants' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN DISMISSING THE PROMISSORY ESTOPPEL CLAIM BECAUSE HUDSON'S PROMISES INDUCED REASONABLE RELIANCE.**

**Promissory Estoppel**

{¶17} In their second assignment of error, Appellants argue the trial court erred in dismissing their claim for promissory estoppel because the trial court wrongly determined there was no clear and unambiguous promise by the City of Hudson to the Village of Boston Heights in the MOU. While our analysis in the first assignment of error, that a municipal corporation cannot be liable on a theory of quasi-contract, may resolve this assignment of error, the parties argued about whether the provision of water utilities by the City of Hudson was a governmental or proprietary function performed by the City. If it was a proprietary function, that *could* allow for recovery under the theory of promissory estoppel. The trial court, however, decided this issue on the basis of whether a clear and unambiguous promise existed at all. We will focus our analysis accordingly.

{¶18} "Promissory estoppel is not a contractual theory, but a quasi-contractual or equitable doctrine designed to prevent the harm resulting to the promisee from the reasonable and detrimental reliance on a promise made by the promisor." *Pitt v. Quanta Bldg. Grp*., 2024-Ohio-2297, ¶ 10 (9th Dist.), citing *Karnes v. Doctors Hosp*., 51 Ohio St.3d 139, 142 (1990). "The elements necessary to establish a claim for promissory estoppel are 'a promise, clear and unambiguous in its terms; reliance by the party to whom the promise is made; that the reliance was reasonable and foreseeable; and that the party claiming estoppel was injured by the reliance.'" *Jones v. BPR/RICO Mfg., Inc*., 2022-Ohio-2715, ¶ 6, (9th Dist.), quoting *Davis v. Cinnamon Lake Assoc., Inc*., 2020-Ohio-5374, ¶ 24 (9th Dist.), quoting *Rigby v. Fallsway Equip. Co., Inc*., 2002-Ohio-6120, ¶ 25 (9th Dist.).

{¶19} The trial court, in dismissing Appellants' claim for promissory estoppel, stated in part:

[Appellants'] claim for promissory estoppel is based upon the "promise" made in the MOU. A review of the language contained in the MOU shows that it lacks a promise with clear and unambiguous terms. The MOU states that "each community joins in this MOU to comprehensively study, plan, and set in motion an agreement to enhance these mutual properties with available highway access and appropriate utilities to the benefit of each community."

If anything, the language of the MOU indicates that the communities were to study, plan, and take steps toward [a] goal that would enhance the properties with highway access and utility provision. The MOU is more akin to an agreement to enter into a contract at a later date depending on the findings of the communities' studies and plans. This Court finds that this is not a clear and unambiguous promise on which any [Appellant] could have relied.

{¶20} As indicated in *Shampton*, 2003-Ohio-1913, at ¶ 34:

Persons seeking to enter into a contractual relationship with a governmental entity are on constructive notice of the statutory limitations on the power of the entity's agent to contract. Since state and local laws are readily available for public review, it is a simple matter for a party to educate itself as to the procedural formalities with which government officials must comply before they may bind a governmental entity to a contract. Here, as noted previously, the charter and Resolution No. R-95-32 clearly did not grant [the city manager] the authority to enter into a long-term lease. As a result, even if [the city manager] did make any promises regarding the long-term lease, appellees could not have reasonably relied upon them. Liability does not attach to the city based on appellees' mistaken interpretation of the resolution.

(Internal citations omitted.)

{¶21} Here, in reviewing the plain language of the MOU, there is no clear and unambiguous promise by the City of Hudson to supply water service to the Village of Boston Heights' commercial zone. Further, like *Shampton*, even if the Hudson mayor had made the alleged promise, Appellants could not reasonably rely upon it because under the Hudson City Charter, the mayor had no authority to make such a promise to the Village of Boston Heights.

{¶22} Thus, even presuming all factual allegations of the first amended complaint are true and in making all reasonable inferences in favor of Appellants, it appears beyond doubt Appellants can prove no set of facts entitling them to recovery for promissory estoppel.

**{¶23}** Accordingly, Appellants' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED IN DISMISSING THE BREACH OF FIDUCIARY DUTY CLAIM BECAUSE COUNCIL MEMBERS VIOLATED THEIR DUTIES TO ACT IN THE PUBLIC INTEREST.**

### Breach of Fiduciary Duty

**{¶24}** In their third assignment of error, Appellants argue the trial court erred in dismissing their claim for breach of fiduciary duty alleged against individual members of Hudson City Council in their capacities as both elected officials and individuals.

**{¶25}** "A claim of breach of a fiduciary duty is basically a claim of negligence, albeit involving a higher standard of care." *Strock v. Pressnell*, 38 Ohio St.3d 207, 216 (1988). "To support a breach of fiduciary duty claim, a party must show the existence of a fiduciary relationship, failure to comply with a duty accorded that relationship, and damages proximately resulting from that failure." *Adorno v. Delgado*, 2004-Ohio-5559, ¶ 8 (9th Dist.). "Whether or not a fiduciary relationship exists depends on the facts and circumstances of each case." *Horak v. Nationwide Ins. Co.*, 2007-Ohio-3744, ¶ 31 (9th Dist.).

**{¶26}** "One does not owe a fiduciary duty to another absent proof of a fiduciary relationship, out of which the duties arise. Ordinarily, in business transactions where the parties deal at arm's length, no fiduciary relationship exists." (Citation omitted.) *RPM, Inc. v. Oatey Co.*, 2005-Ohio-1280, ¶ 19 (9th Dist.). "A fiduciary duty may arise out of a contract or an informal relationship, however, where both parties to the transaction understand that a special trust of confidence has been reposed." *Id*. at ¶ 20. "Thus, a fiduciary relationship cannot be unilateral, but must be mutual." *Horak* at ¶ 32.

{¶27} In dismissing Appellants' claim for breach of fiduciary duty, the trial court stated, in part:

The First Amended Complaint does not contain any allegations that there is a fiduciary duty owed by the members of the Hudson City Council to [Appellant] other than an alleged common-law duty to act in a faithful manner to the public trust, which were breach by violation of the MOU. This Court has already determined that the MOU is not a contract thereby disposing of one of [Appellants'] theories for the existence of fiduciary duty.

As for the other, [Appellants] have failed to produce any statute or case law that would demonstrate that there is a common-law fiduciary duty owed by elected officials to the public.

{¶28} Upon review of Appellants' First Amended Complaint, there are no allegations that show the existence of a fiduciary relationship between members of Hudson City Council, in their individual or official capacities, and the Village of Boston Heights, AJ Allison Enterprises, LLC, or S.J. Fireworks Unlimited, LLC. As indicated above, there is no valid contract between the parties. Further, there is no common-law duty that this Court has been made aware of which creates blanket fiduciary relationships between members of a city's council and the public-at-large.

{¶29} Thus, even presuming all factual allegations of the first amended complaint are true and in making all reasonable inferences in favor of Appellants, it appears beyond doubt Appellants can prove no set of facts entitling them to recovery for breach of fiduciary duty.

{¶30} Accordingly, Appellants' third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED IN DISMISSING THE TORTIOUS INTERFERENCE CLAIM BECAUSE AFI INTENTIONALLY DISRUPTED APPELLANTS' BUSINESS RELATIONSHIPS.**

**Tortious Interference with Contract**

{¶31} In their fourth assignment of error, Appellants' argue the trial court erred in dismissing their tortious interference claim "because AFI intentionally disrupted Appellants' business relationships."

{¶32} We note that Appellants' first amended complaint lists its claims on the first page of the pleading and this particular claim is captioned "Tortious Interference with Contract." Further, the allegations in the first amended complaint indicate AFI was aware of the MOU between the City of Hudson and the Village of Boston Heights and intended to "disrupt the MOU" by lobbying Hudson City Council against AJ Allison Enterprises, LLC's resolution to extend water service to its commercial building located in the Village of Boston Heights. Additionally, Appellants alleged AFI's intent "was to induce Council and Hudson to breach the MOU to prevent Allison and S.J. Fireworks from receiving water service to limit local business competition from S.J. Fireworks." As such, we will only analyze Appellants' claim as Tortious Interference with Contract, and not Tortious Interference with Business Relationships which has not been properly plead in Appellants' first amended complaint.

{¶33} As indicated above, there is no valid contract, in the MOU or ratification through performance of the MOU, between the City of Hudson and the Village of Boston Heights relating to the provision of water services by the City of Hudson to the Village of Boston Heights' commercial zone. Indeed, without a valid contract to interfere with, there is no tort.

{¶34} Thus, our resolution of Appellants' first assignment of error renders its fourth assignment of error moot and we decline to address it. *See* App.R. 12(A)(1)(c).

III.

{¶35} For the reasons set forth above, Appellants' first, second, and third assignments of error are overruled and Appellants' fourth assignment of error is moot. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
CONCURS.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

WARNER MENDENHALL, Attorney at Law, for Appellant.

RANDY D. BRIGGS, STEVEN A. DIMENGO, and J. ALEX QUAY, Attorneys at Law, for Appellants.

DIANA A. CALTA, ANTHONY J. COYNE, and KATHRYN WEBER, Attorneys at Law, for Appellee.

DAVID L. HARVEY, III and MATTHEW B. ABENS, Attorneys at Law, for Appellees.